2018 IL App (2d) 171013
No. 2-17-1013
Opinion filed September 6, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| WARREN R. GARLICK, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17-MR-1086 |
| | ) | |
| BLOOMINGDALE TOWNSHIP, | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Zenoff and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, Warren R. Garlick, *pro se*, sought, under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2016)), from defendant, Bloomingdale Township, an electronic copy of all publicly disclosable data within the township's property-assessment software system, in its native file format. The township provided certain data to plaintiff, but plaintiff filed a complaint for declaratory judgment, injunctive relief, and civil penalties, arguing that the data was not provided in the format that he had requested. The township moved to dismiss, and the trial court granted the motion, finding that plaintiff's claim was moot and barred by collateral estoppel. The trial court also granted the township's request for sanctions under Illinois Supreme Court Rule 137 (eff. July 1, 2013) against plaintiff, awarding $31,336.50 in

attorney fees and $196 in costs. Plaintiff appeals. We affirm the trial court's dismissal on mootness grounds and its assessment of sanctions, but we deny the township's motion for appellate sanctions under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994).

¶ 2                                    I. BACKGROUND

¶ 3                                    A. Prior Litigation

¶ 4     On November 16, 2015, plaintiff submitted a FOIA request to the township, seeking certain property parcel information. He referenced the township's web portal, where individual property parcel records could be retrieved, and specifically requested " 'a copy of the database containing this data in its native file format.' " (Emphasis omitted.) *Garlick v. Bloomingdale Township*, 2017 IL App (2d) 160994-U ¶ 4 (*Garlick I*). The township informed plaintiff that he could access the information on its web portal, and plaintiff responded that he could do so only one parcel at a time, which was too laborious. He asked the township to reconsider, and the township responded that fulfilling his request would not be feasible and would present an undue burden. Plaintiff sued the township, seeking a declaratory judgment and injunctive relief. He alleged that he had " 'requested a copy of the entire database containing the data that was being made available online in its native file format.' " (Emphasis omitted.) *Id.* ¶ 10. He also argued that retrieving the data from the web portal would be very laborious and did not constitute reasonable access under the FOIA. 5 ILCS 140/8.5(a) (West 2016). The township wrote to plaintiff, stating that copyright law and proprietary claims prohibited furnishing the data in its native file format. However, the township offered to provide it in the form of an Excel spreadsheet. The township also noted that the data was maintained in the " 'Assessors IMS-Computer Aided Mass Appraisal' " (CAMA) software, owned by JRM Consulting, Inc (JRM). *Garlick I*, 2017 IL App (2d) 160994-U, ¶ 11. The township also moved to dismiss plaintiff's

complaint, arguing that the requested information in its native file format was exempt from disclosure under the FOIA. 735 ILCS 5/2-619(a)(9) (West 2016).

¶ 5    Subsequently, the township provided plaintiff a copy of the data that he requested, in an Excel spreadsheet. Plaintiff responded that the Excel spreadsheet, as opposed to an " 'SQL Server database, as requested,' " was not responsive to his FOIA request. *Garlick I*, 2017 IL App (2d) 160994-U, ¶ 18. Apparently, this was the first time that plaintiff had referred to the native file format as being synonymous with an SQL Server database. *Id.* Thereafter, the township provided the data in an SQL Server file format. It also filed an amended motion to dismiss, arguing that plaintiff's complaint was moot because he possessed the requested data. The trial court granted defendant's motion.

¶ 6    This court affirmed, holding that plaintiff's claim was properly dismissed on mootness grounds because the township provided him the data he requested (the web portal data in its native file format). *Id.* ¶ 33. This court rejected plaintiff's argument that he had requested a copy of the township's *entire* property-assessment database, not merely the data available on its web portal, because he raised this argument when the motions to dismiss were filed, not in his original request (which was clarified shortly thereafter to specify the desired format). *Id.* ¶ 32.

¶ 7                                    B. Current Litigation

¶ 8    On June 16, 2017, plaintiff sent a new FOIA request to the township, seeking all publicly disclosable data within the township's CAMA property-assessment software system. He noted that the CAMA software used an SQL Server database to store property-assessment data, all of which, he asserted, was publicly disclosable. Plaintiff also stated that his request was not for commercial purposes.

¶ 9    In a June 19, 2017, "addendum," plaintiff stated that he wanted the data "in its native file format," which he believed was the Microsoft SQL Server format. He noted that, in the past, there were "difficulties receiving the data in its proper data type format" and that the township had converted the data into a fixed-length text format. Plaintiff asserted that this was not acceptable, nor was it "the format in which it is maintained" (5 ILCS 140/6(a) (West 2016)) by the township. "Any data elements (data points) should be provided in the data type in which they are stored within the database." Plaintiff also requested that the township "preserve the existing tables from which these data elements (data points) are extracted without concatenating or otherwise altering this structure." He objected to JRM's allegation of copyright protection over the table and field names, because, in his view, there is no copyright protection for single words or phrases. Alternatively, plaintiff stated that he was "open to the possibility of these descriptors being changed."

¶ 10    On June 26, 2017, the township extended its time to respond by five business days, until July 3, 2017, stating that a timely response would be unduly burdensome and interfere with its operations. Specifically, the township asserted that it had to collect a substantial number of records, search extensively for the records, and determine if any exemptions apply.

¶ 11    On July 3, 2017, the township responded to plaintiff's June 19, 2017, FOIA request, providing data in the Microsoft SQL Server format. (In its memorandum in support of its motion to dismiss filed on September 15, 2017, the township stated that the data it provided on July 3, 2017, was in the same format as its disclosure in *Garlick I*.)

¶ 12    On July 26, 2017, in a second "addendum" to his request, plaintiff advised the township that the data he had received was not in the format in which it is maintained. Plaintiff conceded that the township had provided the data with the existing table formats and the table and field

names. However, as to the data elements, plaintiff asserted that they were in the varchar data type. "There are many data elements that contain integer values (*i.e.*[,] whole numbers), others that contain float values (*i.e.*[,] real numbers)." According to plaintiff, the varchar data type "is the character data type. It is completely different from integer, float[,] and date types." "Additionally[,] there are data elements that contain data values (*i.e.*[,] datetime)." Plaintiff stated that he requested the data as it existed in the township's SQL Server database. "[I]f the data elements are stored within the database as whole numbers [they] should be provided in that format[.]" Plaintiff concluded that, *"[r]ather than treat [the township's response] as a denial of my FOIA request*, warranting immediate judicial review, I have chosen instead to draw this matter to your attention, asking how you propose to address the matter." (Emphasis added.)

¶ 13    On August 1, 2017, the township's counsel e-mailed plaintiff that he was working on the matter and would get back to him by August 4, 2017. In an e-mail response, plaintiff voiced no objection and stated that an answer by August 4, 2017, "would be appreciated." On August 4, 2017, the township advised plaintiff that it had asked JRM to again export the database using the original data type formats. It advised in separate correspondence that it would reply to plaintiff no later than August 9, 2017.

¶ 14    However, on August 7, 2017, plaintiff filed a complaint against the township for declaratory judgment, injunctive relief, and civil penalties, alleging that there was no good reason why the township could not fully comply with his FOIA request. He sought an order directing the township to provide the requested data and assessing $5000 in civil penalties, fees, and costs.

¶ 15    On August 9, 2017, the township responded that (1) the data type in which the data was maintained was exempt from public disclosure, because it was JRM's proprietary, trade-secret,

and copyright-protected information and, (2) notwithstanding this position, JRM had authorized the township to release the data type to plaintiff "for the limited and sole purpose of [his] own inspection" and without waiving its rights under the law or authorizing further reproduction, use, or dissemination of the data type. The township also stated that plaintiff's lawsuit was not warranted under the law and was filed for the purpose of harassing the township and causing it to incur needless litigation expenses. The township alleged that, when plaintiff filed his suit, his July 26, 2017, "addendum," which it characterized as a *new* FOIA request, had *not* been denied and the township had notified him that counsel was evaluating his request and would respond no later than August 9, 2017. It noted that, in an August 4, 2017, e-mail, plaintiff had acknowledged this notice.

¶ 16    The township explained that plaintiff's July 26, 2017, FOIA request constituted a *new* request and not a continuation of his June 19, 2017, request because (1) in the first request, plaintiff had asked for all publicly disclosable property-assessment data within the township's CAMA database, in its native file format (which plaintiff believed was the Microsoft SQL Server format); (2) on June 26, 2017, the township extended its time to respond by five business days (5 ILCS 140/3 (West 2016)); and (3) on July 3, 2017, it provided plaintiff with "all the information you requested in the format requested. 'Data type' as opposed to raw data is not 'property assessment data' and is not 'publicly disclosable' as you have been advised."

¶ 17    Next, the township informed plaintiff that, in response to his 2015 FOIA request, which led to *Garlick I*, the township had provided him with "a similar database with the property assessment data requested in Microsoft SQL Server format with identical 'data type' to that which you were provided in response to your June 19, 2017," FOIA request. "You could have, *but did not*, raise this 'data type' issue in the previous litigation." (Emphasis added.) Thus, the

township argued, plaintiff's suit was barred by *res judicata* and forfeiture. Further, it asserted that the suit was moot "based on the disclosure provided herewith." (In a subsequent pleading, the township alleged that, with this correspondence, it provided plaintiff with "another copy of the property assessment data in its native file format of Microsoft SQL Server, this time with the data type [p]laintiff specified" in his July 26, 2017, FOIA request.) The township requested that plaintiff voluntarily dismiss his suit.

¶ 18    On August 24, 2017, plaintiff responded that he would not voluntarily dismiss his complaint. In a September 5, 2017, e-mail to the township's counsel, plaintiff stated that the "Bloomingdale Township package has been briefly reviewed and appears to contain the *correct* data types." (Emphasis added.)

¶ 19    On September 15, 2017, the township moved to dismiss plaintiff's complaint (735 ILCS 5/2-619.1 (West 2016)), arguing that (1) the township did not deny plaintiff's June 16, 2017, FOIA request and he was collaterally estopped from claiming that he was not provided the requested data in its native file format on July 3, 2017, and, alternatively, his complaint was moot because he indicated that he was satisfied with the data provided him on August 9, 2017 (*id.* § 2-619(a)(4), (9)); and (2) his request for penalties and fees should be stricken for failure to make sufficient factual allegations (*id.* § 2-615). The township sought dismissal with prejudice of plaintiff's complaint and leave to move for sanctions under Rule 137 for plaintiff's filing and maintenance of a frivolous complaint.

¶ 20    On October 19, 2017, the trial court granted the township's motion to dismiss and granted it leave to move for sanctions. The court found that plaintiff's claim was moot and barred by collateral estoppel. On November 2, 2017, the township moved for sanctions.

¶ 21    On December 14, 2017, the trial court denied plaintiff's motion to reconsider.  The court found that plaintiff's arguments had been previously raised.  "You have not cited any new case law or any change in the law or anything that could not have been raised initially."  It also granted the township's motion for Rule 137 sanctions, finding that the attorney fees detailed in the township's filings were reasonable and related to this litigation and that the costs incurred were warranted.  The court found that this case was "virtually identical in every respect to the previous litigation" (*i.e.*, *Garlick I*).  "The issues that were decided in that case were or could have been the subject of the appeal.  If you decided to abandon the issue of whether the native file format was sufficient, that was your choice; however, the decision in this case is bolstered by the Naperville case [(*i.e.*, *Garlick v. Naperville Township*, 2017 IL App (2d) 170025)], which also directly contravened your allegations in both the first case and this case."[1]  The court found that this case was frivolous, not well grounded in fact or law, and deserving of sanctions.  The township's counsel's $176 hourly rate, the court determined, was about half of what "most attorneys in Du Page County of similar experience and expertise would charge."  It awarded the township $31,336.50 in attorney fees and $196 in costs.  Plaintiff appeals.

¶ 22                                        II. ANALYSIS

¶ 23                                   A. Standards of Review

---

[1] In the Naperville case, this court held that the provision of a township's property assessment database, excluding protected intellectual property, satisfied plaintiff's request for a copy of the database of real-property details from the township's website in its native file format, an SQL Server format, and that, although plaintiff challenged the validity of JRM's trade-secret and copyright claims, prosecution of such intellectual property issues was not proper in a FOIA proceeding.  *Naperville Township*, 2017 IL App (2d) 170025, ¶¶ 45, 60-61.

¶ 24 The township's motion to dismiss was brought pursuant to section 2-619.1 of the Code of Civil Procedure (Code), which allows a party to move for dismissal under both sections 2-615 and 2-619. 735 ILCS 5/2-619.1 (West 2016). "A section 2-615 motion attacks the legal sufficiency of the plaintiff's claims, while a section 2-619 motion admits the legal sufficiency of the claims but raises defects, defenses, or other affirmative matter, appearing on the face of the complaint or established by external submissions, that defeats the action." *Aurelius v. State Farm Fire & Casualty Co.*, 384 Ill. App. 3d 969, 972-73 (2008). Mootness is a matter properly raised under section 2-619. *Hanna v. City of Chicago*, 382 Ill. App. 3d 672, 676-77 (2008). We review *de novo* a dismissal under section 2-619.1. *Carr v. Koch*, 2011 IL App (4th) 110117, ¶ 25.

¶ 25 The determination of whether to impose sanctions rests within the sound discretion of the trial court, and that decision will not be disturbed on review absent an abuse of discretion. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). An abuse of discretion occurs when no reasonable person could have shared the view taken by the trial court. *Nelson v. Chicago Park District*, 408 Ill. App. 3d 53, 67-68 (2011).

¶ 26                                    B. FOIA

¶ 27 Under the FOIA, public records are presumed to be open and accessible. 5 ILCS 140/1.2 (West 2016); *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989) (FOIA's purpose is "to open governmental records to the light of public scrutiny"). "Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." 5 ILCS 140/1 (West 2016). Based on

this intent, FOIA's exemptions are to be read narrowly. *Peoria Journal Star v. City of Peoria*, 2016 IL App (3d) 140838, ¶ 11.

¶ 28    Section 6(a) of the FOIA provides, in relevant part:

"When a person requests a copy of a record maintained in an electronic format, the public body shall furnish it in the electronic format specified by the requester, if feasible.  If it is not feasible to furnish the public records in the specified electronic format, then the public body shall furnish it in the format in which it is maintained by the public body, or in paper format at the option of the requester."  5 ILCS 140/6(a) (West 2016).

Upon receipt of a proper FOIA request, a public body must comply with the request unless one of the exemptions provided in section 7 of the FOIA applies. *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 463 (2003).  If a public body invokes a section 7 exemption, it must give written notice specifying the exemption. *Id.* at 464.  Further, a public body must comply with or deny a FOIA request within five business days, unless it seeks a five-business-day extension.  5 ILCS 140/3(d), (e) (West 2016).

¶ 29                              C. Mootness

¶ 30    Plaintiff argues that the trial court erred in dismissing his complaint on the basis that his claim was moot.  In his reply brief, he concedes that he was ultimately provided the data he had requested, but he contends that the provision was untimely.  For the following reasons, we disagree.

¶ 31    Plaintiff sent his first request to the township on June 16, 2017, requesting all publicly disclosable data within the township's CAMA software system, which uses an SQL Server database.  In a June 19, 2017, "addendum," plaintiff specified that he sought the data in its native

file format, which he believed was the Microsoft SQL Server format. He also stated that previous difficulties in receiving data in its proper format were because the township had converted the data into a fixed-length text format, which was not acceptable to him and was not the format in which the township maintained the data. Plaintiff specified that he wanted tables preserved and that, to the extent that JRM alleged protection over the table and field names, he was "open to the possibility of these descriptors being changed." On June 26, 2017, the township extended its time to reply to plaintiff by five business days. On July 3, 2017, it provided the data to plaintiff in the Microsoft SQL Server format.

¶ 32    On July 26, 2017, plaintiff responded to the township, conceding that the township had complied with his requests to maintain the existing table formats and the table and field names. However, the data elements had been provided in the varchar data-type format, a character data type, when he had requested integer, float, and date types. Although he styled the letter as a second "addendum" to his June 16, 2017, FOIA request, plaintiff further stated that, *"[r]ather than treat [the township's response] as a denial of my FOIA request*, warranting immediate judicial review, I have chosen instead to draw this matter to your attention, asking how you propose to address the matter." (Emphasis added.) Nowhere in this correspondence did plaintiff assert that the varchar format was synonymous with a fixed-length format, which he asserted on June 19, 2017, was not acceptable.

¶ 33    The township, in turn, twice extended its time to respond to plaintiff's July 26, 2017, request and informed him that it would respond no later than August 9, 2017. In the meantime, on August 7, 2017, plaintiff filed his complaint. In its August 9, 2017, response, the township informed plaintiff that it was treating plaintiff's July 26, 2017, "addendum" as a *new* FOIA request, which had not been denied, because the township had already, on July 3, 2017,

responded to his first request, providing him with the property-assessment database in the Microsoft SQL Server format. Further, although it asserted that the data type in which the data was stored was exempt from disclosure, because it was JRM's copyright-protected property, JRM had authorized the township to provide him with the data type for his inspection. Indeed, on that date, the township provided plaintiff with the data in the Microsoft SQL Server format with the data type he requested on July 26, 2017. Significantly, on September 5, 2017, in an e-mail to the township's counsel, plaintiff stated that the "Bloomingdale Township package has been briefly reviewed and appears to contain the *correct* data types." (Emphasis added.)

¶ 34 Plaintiff argues that he was provided with the data past the statutory deadline. The issue here turns on whether his July 26, 2017, FOIA request was an "addendum," as plaintiff asserts, or a new request, as the township asserts. Plaintiff maintains that it contravenes the policy underlying the FOIA to allow a public entity to delay or otherwise act in bad faith in responding to a FOIA request. We disagree with plaintiff's characterization. The township provided plaintiff with the data he requested in his first request. In his July 26, 2017, letter, he sought the data in a format that he had not specified in any earlier letters. It was certainly reasonable for the township to treat the letter as a new FOIA request. It had already, and in good faith, responded to the earlier one.

¶ 35 Plaintiff also argues that the township's letter extending its time to respond did not comply with the statute. He contends that the township did not timely send the letter, failed to list any permissible reason for an extension, and did not state when a response would be forthcoming. This failure to follow the statutory mandate, in his view, constituted a denial of his FOIA request. We disagree.

¶ 36    Section 3 of the FOIA states that a public body's failure to comply with a written FOIA request, extend the time for response, or deny a request within five business days after its receipt is considered a denial of the request. 5 ILCS 140/3(d) (West 2016). The time for a response may be extended for not more than five business days from the original due date for the response, for reasons specified in the statute. *Id.* § 3(e) (reasons include, *inter alia*, that the request is couched in categorical terms and requires extensive search or evaluation by personnel having the necessary competence and discretion to determine if the responsive records are exempt or require appropriate deletions). As significant here, the public body and the person making the request "may agree in writing to extend the time for compliance for a period to be determined by the parties," and, in such a case, the public body's failure "to comply with any previous deadlines shall not be treated as a denial of the request for the records." *Id.* Further, section 3(f) provides:

> "(f) When additional time is required for any of the above reasons, the public body shall, within 5 business days after receipt of the request, notify the person making the request of the reasons for the extension and the date by which the response will be forthcoming. Failure to respond within the time permitted for extension shall be considered a denial of the request. A public body that fails to respond to a request within the time permitted for extension but thereafter provides the requester with copies of the requested public records may not impose a fee for those copies. A public body that requests an extension and subsequently fails to respond to the request may not treat the request as unduly burdensome under subsection (g) [addressing categorical and repeated requests]." *Id.* § 3(f).

¶ 37    Five business days after plaintiff sent his FOIA request on July 26, 2017, was August 2, 2017.   However, on August 1, 2017, the township's counsel e-mailed plaintiff that he was working on the matter and would get back to him by August 4, 2017.   In an e-mail response, plaintiff stated that an answer by August 4 "would be appreciated."   This correspondence reflects that the parties agreed that the township would provide plaintiff with information as to the status of his request by August 4, 2017.   Section 3(e) of the statute provides for such an agreement. See *id.* § 3(e).   The township sent plaintiff a letter on August 4, 2017, stating that it was consulting with JRM as to exporting the data in the original data type formats.   This correspondence, which stated the reason for the delay (see *id.*), effectively gave the township an additional five business days, *i.e.*, until August 11, 2017, to respond to plaintiff's request. Plaintiff filed suit on August 7, 2017, and the township provided him with the requested data on August 9, 2017.   Thus, contrary to plaintiff's claim, the township did not fail to meet any statutory deadlines or other requirements for responding to his request.

¶ 38    Having determined that the township properly obtained its extensions, we next address whether plaintiff's claim is moot.   Because the existence of an actual controversy is a prerequisite for appellate jurisdiction, reviewing courts generally will not decide matters that are abstract, hypothetical, or moot.   *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003).   An issue is moot where an actual controversy no longer exists between the parties, or where events have occurred that make it impossible for the court to grant effective relief.   *Wheatley v. Board of Education of Township High School District 205*, 99 Ill. 2d 481, 484-85 (1984).   In the FOIA context, "[o]nce an agency produces all the records related to a plaintiff's request, the merits of a plaintiff's claim for relief, in the form of production of information, become[ ] moot," even where they were tendered to the plaintiff "after a lengthy delay."   *Duncan Publishing, Inc. v. City of Chicago*, 304

Ill. App. 3d 778, 782 (1999); see also *Roxana Community Unit School District No. 1 v. Environmental Protection Agency*, 2013 IL App (4th) 120825, ¶ 42 (finding that the plaintiff's complaint for injunctive relief and declaratory judgment was moot where the defendant agency "eventually provided plaintiff those documents, albeit after a delay in violation of the [FOIA]"). We conclude that the trial court did not err in dismissing plaintiff's complaint on the basis of mootness. Plaintiff does not argue that the data the township provided to him on August 9, 2017, was not fully responsive to his request. Indeed, he concedes that it was. Thus, there is no controversy concerning the provision of the requested data.

¶ 39                    D. Attorney Fees, Costs, and Civil Penalties

¶ 40    Next, plaintiff argues that the trial court erred in striking his request for attorney fees, costs, and civil penalties. Section 11(i) of the FOIA provides in relevant part that, if a FOIA requester "prevails in a proceeding under this Section, the court shall award such person reasonable attorney's fees and costs." 5 ILCS 140/11(i) (West 2016). We conclude that the trial court did not err in striking plaintiff's request for attorney fees and costs, because plaintiff did not prevail on his claim. Further, plaintiff was not entitled to attorney fees when he proceeded *pro se* and, thus, incurred no attorney fees. *Brazas v. Ramsey*, 291 Ill. App. 3d 104, 110 (1997). As for civil penalties, we conclude that the trial court did not err in striking plaintiff's request for such, because he could not show bad faith on the township's part. 5 ILCS 140/11(j) (West 2016). Twice, he was timely provided with the information he requested.

¶ 41                    E. Monetary Sanctions Against Plaintiff

¶ 42    Next, plaintiff argues that the trial court abused its discretion in imposing sanctions against him for filing a frivolous complaint. He contends that (1) the court did not adequately

specify its reasons for imposing the sanctions, (2) sanctions were not warranted, and (3) the amount was unreasonable. For the following reasons, we disagree.

¶ 43 Rule 137 allows a court to impose sanctions against a party or counsel who files a pleading or motion that is not well grounded in fact, is not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or is interposed for any improper purpose. "The purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits." *Yunker v. Farmers Automobile Management Corp.*, 404 Ill. App. 3d 816, 824 (2010). Rule 137 mandates that, by signing a pleading, motion, or other document, the attorney or party certifies that "to the best of his [or her] knowledge, information, and belief formed after reasonable inquiry [the filing] is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a) (eff. July 1, 2013).

¶ 44 Under the rule, appropriate sanctions may include an order to pay the other party's reasonable expenses "incurred because of the filing of the pleading, motion[,] or other document, including a reasonable attorney fee." *Id.* Because the rule is penal, it must be strictly construed. *In re Estate of Wernick*, 127 Ill. 2d 61, 77 (1989).

¶ 45 The standard for evaluating a party's conduct under the rule is one of reasonableness under the circumstances existing at the time of the filing. *Lewy v. Koeckritz International, Inc.*, 211 Ill. App. 3d 330, 334 (1991). The party requesting sanctions is obligated to show that the opposing party made assertions of fact that were untrue and were made without reasonable cause. *Wernick*, 127 Ill. 2d at 77.

¶ 46    Plaintiff first complains that the trial court did not specify its reasons for imposing sanctions against him.   Rule 137 requires the court imposing sanctions to "set forth with specificity the reasons and basis of any sanction *** either in the judgment order itself or in a separate written order."   Ill. S. Ct. R. 137(d) (eff. July 1, 2013).   Here, plaintiff argues, the trial court used only broad language and failed to articulate why his complaint was frivolous.   We disagree.   The trial court stated that similar or identical issues were previously decided in *Garlick I* and *Naperville Township*, thereby implicating collateral estoppel or *res judicata* and, as most relevant here, plaintiff's pattern of litigation of moot or improper issues.   *Garlick I* involved a similar FOIA request as here, and this court held, *as we do here*, that plaintiff's claim was moot because he had been provided the data that he had requested and in the format that he had requested.   *Garlick I*, 2017 IL App (2d) 160994-U, ¶ 33.   In *Naperville Township*, we held that the provision of the township's database, excluding protected intellectual property, satisfied plaintiff's request for a copy of the database of real-property details from the township's website in its native file format, an SQL Server format, and that, although plaintiff challenged the validity of JRM's trade-secret and copyright claims, prosecution of such intellectual property issues was not proper in a FOIA proceeding.   *Naperville Township*, 2017 IL App (2d) 170025, ¶¶ 45, 60-61.   Here, the trial court's findings, in our view, were sufficient to satisfy the rule. Compare *Kellet v. Roberts*, 276 Ill. App. 3d 164, 172 (1995) (sanction orders' incorporation by reference of the plaintiff's motion for sanctions and their adoption of the reasoning of the motion satisfied the rule; although explicit reasons are preferred, "[w]e believe [incorporation of the motion was] sufficient to satisfy the rule because both the motion and the order are in writing and we can determine whether the court's decision was informed, based on valid reasons that fit the case and which followed logically from the stated reasons"), with *Bedoya v. Illinois*

*Founders Insurance Co.*, 293 Ill. App. 3d 668, 681 (1997) (where trial court stated that " '[plaintiffs] are entitled to it,' " reversed and remanded for court to make specific findings of fact or law supporting its decision to impose Rule 137 sanctions).

¶ 47    Next, plaintiff argues that the imposition of sanctions was improper because the alleged wrongdoing was not egregious enough to warrant sanctions.  See *Wernick*, 127 Ill. 2d at 77 (party requesting sanctions is obligated to show that the opposing party made assertions of fact that were untrue and were made without reasonable cause).  He contends that the township did not identify which statements in his complaint were false or how the complaint was interposed for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.  Plaintiff urges that his complaint was well grounded in fact and warranted by existing law.  Even if not, he continues, his alleged wrongdoing was not egregious enough to warrant over $31,000 in sanctions. Plaintiff asserts that it is not sanctionable conduct to pursue a claim or defense in good faith and fail to prevail on the merits.   We reject plaintiff's arguments.

¶ 48    We concluded above that plaintiff's claim was moot.  On August 9, 2017, he was timely provided with the data he requested, yet he continued to pursue litigation in this matter.  The township, on multiple occasions, asked plaintiff to dismiss his suit, which he declined to do.  In this appeal, he concedes that the data the township provided to him on August 9, 2017, satisfied his request.  "Rule 137 contains an implicit requirement that an attorney promptly dismiss a lawsuit once it becomes evident that it is unfounded." *Rankin v. Heidlebaugh*, 321 Ill. App. 3d 255, 267 (2001).  We are at a loss as to why plaintiff continued to pursue this claim other than for nefarious reasons.  It was not unreasonable for the trial court to find that plaintiff maintained his action for a vexatious or harassing reason.

¶ 49    Plaintiff's final argument is that the township's attorney fees were excessive. First, he relies on a comparison to other cases in which he sued other public entities. He argues that the fees in those cases, which were between $4400 and $7500, are barometers for what constitute reasonable fees in this case. He estimates that the fees here should have been in the range of $5000 to $10,000, not $31,336.50. Second, plaintiff claims that the township exorbitantly inflated its attorney fees by improperly including fees pertaining to plaintiff's FOIA requests. Third, he argues that the township improperly sought to be reimbursed twice for its fees. Plaintiff asserts, without citation to relevant authority, that the township failed to disclose that its litigation expenses were being reimbursed by the Township Officials of Illinois Risk Management Association (TOIRMA). Fourth, he argues that the township's redacted invoices (it alleged that attorney-client-privileged information was redacted, it instead listed the general nature of the tasks performed, and it noted in an affidavit that it would provide the court all details, upon its request, for *in camera* inspection) were insufficient evidence to support its motion and that an evidentiary hearing should have been held. Finally, plaintiff argues that the trial court abused its discretion in finding that the fees were reasonable. We reject plaintiff's arguments.

¶ 50    In an affidavit, the township's counsel averred that, as of December 14, 2017, the township had incurred $20,403.50 in attorney fees related to the township's motion to dismiss, plaintiff's motion to reconsider the dismissal, and the township's Rule 137 motion for sanctions. Further, $10,933 in fees were related to plaintiff's requests for information to support his opposition to the township's motions to dismiss and for sanctions. In the affidavit, counsel also averred that the township's attorney fees and costs had been provisionally covered by TOIRMA and that counsel's firm had tendered invoices directly to TOIRMA.

¶ 51 As to plaintiff's first point, we disagree that, to determine if the sanction here was reasonable, we can compare it to the fees incurred in other FOIA cases he has brought against public entities. See, *e.g.*, *Father & Sons Home Improvement II, Inc. v. Stuart*, 2016 IL App (1st) 143666, ¶ 65 ("a cursory comparison of the hours expended by one defendant to the hours expended by another defendant is not determinative in reviewing the reasonableness of an award of attorney fees"; further, "[t]he mere fact that [one defendant] expended more time than the [other defendant] defending this lawsuit does not establish that the circuit court's award of attorney fees was unreasonably excessive"). Further, the records in those cases are not before this court, and, as the township notes, plaintiff did not make multiple requests to obtain records for his prosecution of those cases, nor did any of those entities file a motion for sanctions against plaintiff for frivolous filings.

¶ 52 Second, we are not persuaded by plaintiff's claim that the township improperly sought fees for his FOIA requests. The fees sought were related to information requests and related grievances that plaintiff submitted after filing his case, and he did not refute, by counteraffidavit or otherwise, the township's averral that the fees were related to plaintiff's efforts in this litigation. As the township notes, attached to his response in opposition to the township's motion to dismiss was the township's response to his August 14, 2018, information request (seeking, among other things, certain e-mails, correspondence to counsel, and documentation of TOIRMA claims).

¶ 53 Third, plaintiff's double-recovery argument also fails. He cites no relevant authority to support it. Illinois Supreme Court Rule 341(h)(7) (eff. Nov. 1, 2017) requires an appellant to include in its brief an "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on."

Moreover, it is well settled that a contention that is supported by some argument but no authority does not satisfy the requirements of Rule 341(h)(7). *Wasleff v. Dever*, 194 Ill. App. 3d 147, 155-56 (1990). Thus, the claim is forfeited. In any event, we would reject the argument because of the nature of Rule 137 sanctions. Because Rule 137 sanctions are penal, courts are not required to review each and every reimbursable component of an attorney-fee award that was imposed as a sanction against a party filing a frivolous lawsuit. *Riverdale Bank v. Papastratakos*, 266 Ill. App. 3d 31, 43 (1994) ("[t]he isolated focus on each reimbursable component part of preparation and trial is not necessary where false allegations made without reasonable cause are determined to be the cornerstone of the entire baseless lawsuit"); *Ashley v. Scott*, 266 Ill. App. 3d 302, 306 (1994) ("counsel is not required to record how each minute of time was expended, but should identify the general subject matter involved in the time expenditure"); *Robertson v. Calcagno*, 333 Ill. App. 3d 1022, 1028 (2002) ("[f]ees are recoverable under Rule 137 even where they are 'lumped,' and even for unaccounted-for time entries").

¶ 54    Plaintiff's fourth argument relates to the redacted attorney-client-privileged information. He asserts that the redacted invoices were insufficient evidence to support the township's motion and that an evidentiary hearing should have been held. We disagree. "Although an evidentiary hearing should always be held when a sanction award is based upon a pleading filed for an improper purpose, a hearing is unnecessary if the sanction award is due to the unreasonable nature of the pleading based on an objective standard." *Hess v. Loyd*, 2012 IL App (5th) 090059, ¶ 26. Furthermore, "the circuit court's acceptance of unrebutted affidavits of counsel as to fees, in the absence of an evidentiary hearing, is within its discretion." *Id.* In this case, because plaintiff's claim was moot, it is clear that his complaint was unreasonable under an objective standard. Thus, no evidentiary hearing was necessary.

¶ 55    Finally, plaintiff argues that the trial court abused its discretion in finding that the fees were reasonable.  We, again, disagree.  In considering the award of reasonable attorney fees, the trial court should consider a variety of factors, including the skill and standing of the attorney employed, the nature of the case, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same or similar services in the community, and whether there is a reasonable connection between the fees charged and the litigation.  *Olsen v. Staniak*, 260 Ill. App. 3d 856, 865-66 (1994).  The township provided detailed invoices concerning the work performed, at its counsel's $175 hourly billing rate.  The trial court found that counsel's hourly rate was about half of the rate that attorneys in the same county with similar experience and expertise would charge.  We find no error in the court's determination that counsel's fees were reasonable.

¶ 56                         F. Motions Taken With the Case

¶ 57    Finally, we address two motions we ordered taken with this case.  In the first motion, plaintiff moves to strike or otherwise disregard material in the township's appendix to its brief.  The appendix consists of two nonbinding determination letters issued by the Attorney General's Office of the Public Access Counselor (PAC).[2]  The township relies on these letters to support its

---

[2] Ill. Att'y Gen. PAC Req. Rev. Ltr. 49983 (Mar. 14, 2018) (concluding that Wheatland Township provided plaintiff with the nonexempt data he had requested; relying on *Naperville Township*, concluding that the township was not required to provide plaintiff with data points, which are, it noted, not raw data but JRM's proprietary information); Ill. Att'y Gen. PAC Req. Rev. Ltr. 50033 (Apr. 4, 2018) (concluding that Lisle Township provided plaintiff with the nonexempt data he had requested; township was not required to provide data points, which are JRM's proprietary information).

collateral-estoppel argument, an issue we do not reach.  An individual whose request for records has been denied may seek review by a PAC, who determines whether further action is warranted on the request.  5 ILCS 140/9.5(a), (c) (West 2016).  The PAC may resolve the issue by mediation, binding opinion, or other means—but only a binding opinion is subject to administrative review.  *Id.* § 9.5(f), 11.5.  However, an individual whose request for records was denied may also file an action in the trial court for injunctive or declaratory relief.  *Id.* § 11(a).  Plaintiff complains that the township raises the letters for the first time on appeal.  He also argues that the letters are unenforceable and have no legal effect.  The township filed no objection to the motion.  We grant plaintiff's motion and strike the letters.

¶ 58    Next, we address the township's motion for sanctions under Rule 375(a) for plaintiff's filing and maintenance of a frivolous appeal and for his violations of Rule 341(h)(7).  The township argues that sanctions are warranted for the same reasons that they were warranted in the trial court.  It further contends that, after plaintiff filed this appeal, the township requested several times that he dismiss it, which he declined to do.[3]

¶ 59    Rule 375(b) allows this court to impose an appropriate sanction upon any party or the party's attorney if we determine that the appeal is frivolous or not taken in good faith.  Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).  An appeal will be deemed frivolous "where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law."  *Id.*  The test to determine whether an appeal is frivolous is based upon an objective standard of conduct.  *Kubiak v. City of Kewanee*,

---

[3]    Plaintiff filed an untimely objection to the township's motion and, later, moved for leave to file his objection *instanter*.  We ordered it taken with the case and herein grant him leave to file.

228 Ill. App. 3d 605, 607 (1992). Sanctions may be awarded against *pro se* litigants under sufficiently egregious circumstances. See, *e.g.*, *Wittekind v. Rusk*, 253 Ill. App. 3d 577, 581-82 (1993) (imposing Rule 375(b) sanctions against *pro se* plaintiff, where the plaintiff filed a meritless petition to reopen judgment on small-claims case nine months after the case was complete and where he had been advised by the trial court during a sanctions hearing to terminate the litigation); see also *Oruta v. Biomat USA, Inc.*, 2017 IL App (1st) 152789, ¶¶ 11-20 (sanctions imposed against *pro se* appellant, where he had filed numerous appeals that were frivolous or not taken in good faith; he had engaged in "gamesmanship," filed unintelligible complaints, failed to file briefs or records, pursued appeals where the court lacked jurisdiction, and filed a motion for a subpoena to try to resurrect an appeal that had been dismissed one year earlier); *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶¶ 84-88 (sanctions imposed against *pro se* defendants in foreclosure case, where the defendants impugned trial judge's integrity, personally attacked mortgagee's attorney in their briefs, filed numerous lengthy pleadings, ignored free legal resources in favor of pursuing tactics that harassed others, and wrongly attempted to name opposing attorney as a party to the case). "The purpose of Rule 375(b) is to condemn and punish the abusive conduct of litigants and their attorneys who appear before us." *Fraser v. Jackson*, 2014 IL App (2d) 130283, ¶ 51. Imposition of sanctions under Rule 375(b) is left strictly to our discretion. *Fields v. Lake Hillcrest Corp.*, 335 Ill. App. 3d 457, 466 (2002).

¶ 60 We agree with the township that plaintiff's appeal was frivolous under Rule 375(b)'s standards. However, as a matter of discretion, we decline to impose sanctions. Plaintiff has filed numerous FOIA complaints against public bodies, but the trial court's sanctions award, which is significant, appears to be the first one assessed against plaintiff in these cases. We decline to

assess additional sanctions and we trust that the trial court's assessment is a sufficient deterrent to future frivolous suits by plaintiff.

¶ 61    Finally, we also decline, in our discretion, to impose sanctions under Rule 375(a), which authorizes sanctions where a party or an attorney has been found to have willfully failed to comply with the rules governing appeals.  Ill. S. Ct. R. 375(a) (eff. Feb. 1, 1994).   In its motion, the township argues that plaintiff's multiple violations of Rule 341(h)(7), in his opening and reply briefs and in his motion to strike, warrant sanctions because he advances arguments that are not supported by fact or law.  We disagree that the violations are so egregious as to warrant sanctions.   However, we grant the township's request to disregard plaintiff's unsupported arguments in violation of Rule 341(h)(7).

¶ 62    In summary, we grant plaintiff's motion to strike and we deny the township's motion for sanctions.

¶ 63                                    III. CONCLUSION

¶ 64    For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 65    Affirmed.