FOURTH DIVISION

September 19, 2002

No. 1-00-4209

JAMES ROBERTSON, )   Appeal from

) the Circuit Court

Plaintiff-Appellee, ) of Cook County.

) 

v. ) 

)

TERESA CAROL CALCAGNO, a/k/a ) No. 97 M3 002178

Theresa Carol Calcagno, a/k/a Carol Theresa ) 

Calcagno, a/k/a Carol Calcagno, JAMES )

JAKUBOSKY, AND ANY AND ALL )

OTHER PERSONS WHO ARE OCCUPYING )

OR IN POSSESSION OF THE PREMISES )

LOCATED AT 2245 SEAVER LANE, )

HOFFMAN ESTATES, IL,       )  

) 

Defendants. ) . 

)

(Daniel Starr, Respondent-Appellant; )    

Timothy L. Rowells, and Starr and Rowells, )      Honorable

a General Partnership, Respondents). ) Arthur Janura, Jr.,

)  Judge Presiding 

PRESIDING JUSTICE THEIS delivered the opinion of the court:

After conducting a hearing, the trial court imposed sanctions of $23,904.25 against attorney Daniel M. Starr for violations of Illinois Supreme Court Rule 137.  155 Ill. 2d R. 137.  On appeal, Starr does not challenge the trial judge's finding that Starr violated Rule 137.  Instead, Starr asks this court to vacate the trial court's sanctions award because the plaintiff's attorney did not initially sign the motion for sanctions.  He contends that this initial failure itself violated Rule 137, thus nullifying all subsequent hearings and the sanction award.  Starr also argues that plaintiff has provided insufficient evidence for the award of attorney fees on certain dates.  We affirm.        

Plaintiff James Robertson's original complaint against defendant Carol Calcagno arose out of a January 27, 1997, contract between Calcagno and Robertson to purchase a townhouse at 2245 Seaver Lane in Hoffman Estates for $234,900.  Robertson granted possession to Calcagno prior to the closing.  When Calcagno failed to perform on the contract, Robertson filed an action for forcible entry and detainer.  The trial court granted an order of possession in favor of Robertson.  When the sheriff attempted to execute the order, however, the sheriff found that James Jakubosky was an occupant of the premises at 2245 Seaver Lane, and did not execute the order of possession because Jakubosky was not included in the order.   

Robertson then filed an amended complaint to include Jakubosky.  On November 7, 1997, Starr filed an appearance and jury demand on behalf of Jakubosky.  He also filed two motions to dismiss, which the court denied.  The matter culminated in a two-day jury trial in which Robertson gained an order of possession against Jakubosky and all unknown occupants of the address.  

One of Robertson's attorneys of record, Loren Mallon, prepared a motion for Rule 137 sanctions against Starr, Timothy L. Rowells, his partner, and Starr & Rowells, their lawfirm.  He faxed the motion from his Chicago office to another attorney of record, Robert Riffner.  Robertson had hired Riffner to file pleadings and make routine court appearances in Rolling Meadows to save on the expense of sending Mallon from Chicago.  Riffner's secretary retyped the motion so it would not be filed as a faxed document.  With Mallon's consent, Riffner signed Mallon's name and clearly placed his initials, "RGR," next to the signature.   

On December 24, 1997, Robertson filed the motion requesting, 
inter alia
, Rule 137 sanctions against Starr and Starr & Rowells.  Robertson alleged that Starr had misrepresented Jakubosky's alleged claim of interest in the property so as to harass Robertson and to cause unnecessary delay in the eviction of Calcagno and needless increase in the cost of the litigation.  Starr filed a response on January 6, 1998.   

On March 18, 1998, the first date of evidentiary hearings in the matter, prior to Jakubosky's testimony under subpoena, the following exchange occurred:

"MR. MALLON: Your Honor, may I call my first witness who is Mr. Jakubosky[.] 

THE COURT: Is he here?

* * *

MR. STARR: Judge, I would like to talk to him first.

THE COURT: What do you want to talk to him about?

MR. MALLON: This isn't your client.

MR. STARR:  I've done an appearance on his behalf.  I want to talk to him.

MR. MALLON: This isn't your client.

MR. STARR: I want time to talk to him, Judge.  I am entitled to talk to him before I get surprised; and I would like to do so, if I might.

THE COURT:  No.  We are calling him.  Let's go.  It's noon.  

MR. STARR: I've got a due process right to talk to him.  I've got a right to talk to him.

MR. MALLON: This is set for a hearing.

MR. STARR:But, Judge, before we put witnesses up there, I have a right to talk to him.

THE COURT: Based on what?

MR. STARR: Judge, I have done an appearance on his behalf.

THE COURT: So what?

MR. STARR:  So I've got a right to talk to him.

THE COURT: Based on what?

MR. STARR: Before we go to trial, I want - -

THE COURT: This is not a trial, it is a hearing.  You will have an opportunity to cross him or then, before you call him as your witness, you can talk to him.  He is not being called as your witness.  Step up."

Once on the stand, Jakubosky testified that he had never met Starr, had never hired Starr and Starr & Rowells, had never authorized Starr and Starr & Rowells to file any papers or pleadings in his name, had never authorized Starr and Starr & Rowells to conduct a two-day jury trial in his name, and he never knew that he was a defendant in the matter until after the trial.   The hearing continued over several days and several witnesses were called by both sides.  

On July 16, 1998, Starr filed a motion to strike the plaintiff's motion for sanctions or in the alternative for summary judgment.  After hearing argument, the court ruled that it had discretion under Illinois Supreme Court Rule 183 (134 Ill. 2d R. 183) to extend the time for Robertson's counsel, Mallon, to sign the Rule 137 motion.  The court allowed Mallon to sign the Rule 137 motion 
instanter
.  The court then denied Starr's motion to strike because Mallon had properly affixed his signature pursuant to the court's extension of time.  The court then heard from witnesses regarding the prove-up of the costs incurred by Robertson's attorneys.  Counsel for Starr cross-examined the witnesses. 

In the trial court's memorandum opinion and order, it noted, "Ms. Calcagno had an extensive history of being a defendant in a [
sic
] forcible cases involving dilatory tactics.  Mr. Starr had acted as an attorney in many of those cases.  This case, like those prior cases, resulted in extensive legal proceedings before Mr. Robertson finally regained possession."  The court found that Starr 

"failed to conduct a reasonable inquiry into the facts prior to filing an appearance on behalf of Mr. Jakubosky on November 7, 1997.  This finding is based on all the evidence received by this court including [the] fact that Mr. Starr received all the information regarding Mr. Jakubosky, both verbal and documentary, from Ms. Calcagno, an individual who he did not trust and who he knew was engaged in a fraudulent scam.  This court further finds that [Starr] violated Supreme Court Rule 137 by filing an unauthorized appearance on behalf of a non-existing occupant for the purpose of delaying an eviction as part of a fraudulent scheme to retain possession of the leasehold."

The court found that Starr had violated Rule 137.  The court awarded attorney fees for expenses incurred after November 7, 1997, the date Starr filed the appearance, and for the filing fee of the complaint.  The court did not allow an award for time which the attorneys did not bill Robertson, nor for time that was recovered in a parallel sanctions proceeding against Calcagno in the bankruptcy court.  

Starr does not argue that the trial court erred in finding him in violation of Rule 137.  Rather, Starr argues that the trial court committed error when it denied his motion to strike Robertson's Rule 137 motion for sanctions.  He specifically argues that because Mallon failed to sign the motion in his "individual name," the court was required to strike the motion as required by Rule 137.  We review the record to determine whether the trial court abused its discretion in denying Starr's requested sanction under Rule 137
.  
Gershak v. Feign
, 317 Ill. App. 3d 14, 18, 738 N.E.2d 600, 605 (2000).  
Rule 137 provides:

"Every pleading, motion and other paper of a party represented by an  attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. * * * The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.  If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant.  If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee."  155 Ill. 2d R. 137.  

Starr relies primarily on 
Bachmann v. Kent
, 293 Ill. App. 3d 1078, 689 N.E.2d 171 (1997), as authority to require the striking of Robertson's Rule 137 motion.  
Bachmann
, 
however,
 
concerned only "the issue of whether the signature of a nonattorney employee of a law firm is sufficient as the signature of an 'attorney of record' under Supreme Court Rule 137."  
Bachmann
, 293 Ill. App. 3d at 1085, 689 N.E.2d at 176.  Here, Riffner signed Mallon's name with the consent of Mallon.  Riffner was an attorney of record.  Therefore, 
Bachmann
 does not control our decision.

This court has previously explained the holding of 
Bachmann
: 

"The 
Bachmann
 court had to assume, faced with a sparse record, that the trial court acted within the scope of Rule 137 in imposing sanctions. The case can be read as standing for the proposition that, in an appropriate case, Rule 137 may be relied upon to impose sanctions. The appellant in 
Bachmann
 did not give us a record we could explore to test the trial court's reasoning against an abuse of discretion standard. The trial court may have concluded that the nonappearance of the defendant in 
Bachmann
, in violation of Rules 90(g) and 237, in itself a ground for sanctions, was exacerbated by the filing of a notice of rejection in a case where the defendant forfeited the right to rejection by failing to appear at the arbitration. It is conceivable that a notice of rejection, under certain circumstances, could be found to have been filed for an improper purpose within the meaning of Rule 137 in such a case."  
Gershak
, 317 Ill. App. 3d at 22, 738 N.E.2d at 607.  

Furthermore, the 
Gershak
 court pointed out that in 
Bachmann
, the "sparse record led us to assume that the trial court had a record before it that revealed an improper purpose behind the failure to affix a proper signature and justified Rule 137 sanctions." 
Gershak
, 317 Ill. App. 3d at 24, 738 N.E.2d at 609.  The 
Gershak
 court also rejected the distinction between a complete lack of a signature and an improperly signed paper.  The court rejected the distinction because it created an irrebuttable presumption of improper purpose and overlooked the penal nature of the rule.  The court also discouraged a "tortured analysis" of signatures because a judge possesses enough tools to punish lawyers who obfuscate and delay.  The court went on to hold that "absent evidence of an improper purpose that meets the test of Rule 137, a signature defect in a notice of rejection is 
de minimis
."  
Gershak
, 317 Ill. App. 3d at 25, 738 N.E.2d at 609. 

We find the 
Gershak
 reasoning applies to the present matter.  We reject Starr's invitation to conduct a tortured analysis of the signature on the Rule 137 motion nor will we make a distinction between an unsigned paper or a defectively signed paper.  
Gershak
, 317 Ill. App. 3d at 25, 738 N.E.2d at 609.  The record is adequate.  The evidence adduced at the hearing demonstrates the purpose behind the motion, symbolized by the signature, was entirely proper.  Mallon and Riffner were promoting and protecting the integrity of the administration of justice while bowing to practicalities to save their client money.  Furthermore, Starr provided no evidence that the initial signature prejudiced Starr's defense or denied him an opportunity to be heard. 

We reject Starr's attempted perversion of Rule 137 into a hypertechnical shield against the prosecution of his egregious conduct.  Starr's interpretation manipulates Rule 137 against itself to harass and delay appropriate sanctions proceedings meant to punish the patent abuse of the judicial system conducted by Starr and Calcagno. The holding urged by Starr would transmogrify a 
de minimus
 signature flaw into a quasi-jurisdictional defect, rendering meaningless all time and expense spent by the litigants, their lawyers, the witnesses, and the court.  We find, therefore, that the trial court did not abuse its discretion in allowing Mallon to resign the motion for sanctions and denying Starr's motion to strike.

Starr's argument that the court improperly found that plaintiff provided sufficient evidence to award fees also fails.
  In considering the award of reasonable attorney fees, the trial court should consider a variety of factors.   
Olsen v. Staniak
, 260 Ill. App. 3d 856, 865, 632 N.E.2d 168, 176 (
1994). These include "the skill and standing of the attorney employed, the nature of the case, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same or similar services in the community, and whether there is a reasonable connection between the fees charged and the litigation."  
Olsen v. Staniak
, 260 Ill. App. 3d 856, 865-66, 632 N.E.2d 168, 176 (
1994), citing 
Chicago Title & Trust Co. v. Chicago Title & Trust Co.
, 248 Ill. App. 3d 1065, 618 N.E.2d 949 (1993).  A trial court's decision as to the reasonableness of attorney fees will not be reversed absent an abuse of discretion.  
Selvy v. Beigel
, 309 Ill. App. 3d 768, 723 N.E.2d 702 (1999).

A party may recover fees under Rule 137 that were incurred because of the sanctionable paper or pleading. 155 Ill. 2d R. 137.  Recoverable fees under Rule 137 include those incurred in pursuit of unsuccessful motions.  
Ashley v. Scott
, 266 Ill. App. 3d 302, 307, 640 N.E.2d 677, 681 (1993).  A party may also recover fees incurred in prosecuting a motion for sanctions.  
Bosch Die Casting Co. v. Lunt Manufacturing Co.
, 236 Ill. App. 3d 18, 33, 603 N.E.2d 546, 556 (1992).  Fees are recoverable under Rule 137 even where they are "lumped," and even for unaccounted-for time entries.  
Riverdale Bank v. Papastratakos
, 266 Ill. App. 3d 31, 639 N.E.2d 219 (1994).  "[C]ounsel is not required to record how each minute of time was expended, but should identify the general subject matter involved in the time expenditure."  
Ashley
, 266 Ill. App. 3d at 306, 640 N.E.2d at 680.

Here, the trial court conducted a hearing on the fees and reviewed the affidavit and amended affidavit of Mallon.  Counsel also was able to cross-examine Mallon regarding the time entries.  The court determined, based upon the evidence, that the hourly rate of the attorneys was reasonable.  Additionally, the court reduced the fee award specifically by those amounts that may have been awarded as part of sanctions against Calcagno in the bankruptcy proceedings, and by amounts that the attorneys did not bill to the client. 

We find that Starr's argument that the time entries for a particular day must be itemized as to the particular task performed pursuant to 
Kaiser v. MEPC American Properties, Inc.
, 164 Ill. App. 3d 978, 518 N.E.2d 424 (1987) and 
Mars v. Priester
, 205 Ill. App. 3d 1060, 563 N.E.2d 977 (1990), to be inapposite.  Those cases concerned fee-shifting pursuant to contracts and did not arise in a Rule 137 context where an attorney's wrongdoing was the cause of the fees.  As stated by
 the 
Riverdale
 court, an "isolated focus on each reimbursable component part of preparation and trial is not necessary where false allegations made without reasonable cause are determined to be the cornerstone of the entire baseless lawsuit."  
Riverdale
, 266 Ill. App. 3d at 43, 639 N.E.2d at 228.  An isolated focus is not necessary here because the costs claimed were incurred because of Starr's filing of an appearance and two motions to dismiss, argument of the motions to dismiss, and participation in a two-day jury trial on behalf of a nonexistant tenant.  Additionally, the trial court was in the best position to observe the witnesses supporting the fees, and we will not disturb the court's credibility determinations.  Accordingly, we find that the trial court did not abuse its discretion in awarding fees for expenses incurred after Starr's filing of an appearance on November 7, 1997.

We do, however, reverse the trial court's award of $105 for the Robertson's filing fee for the initial complaint.  This amount was incurred prior to the filing of any pleading or paper filed by Starr.  Therefore, it is not an expense "because of" Starr's violation within the ambit of Rule 137.  We therefore reduce the sanctions award to $23,799.25.

Affirmed as modified.  

HARTMAN and KARNEZIS, J.J., concur.